Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

# UNITED STATES DISTRICT COURT

for the

Northern District of Califor ⌄

_____ Division

RECEIVED
OCT 3 0 2020
CLERK, SUSAN Y. SOONG
NORTHERN, U.S. DISTRICT COURT
DISTRICT OF COURT
SAN JOSE OF CALIFORNIA

NC

AbdelFatah Ellawendy

Case No. C 20 07757

_(to be filled in by the Clerk's Office)_

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

-v-

(John Ferrera) Monterey County District Attorney
Jennifer Carlquest (an individual)

*Defendant(s)*
*(Write the full name of each defendant who is being sued.  If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.  Do not include addresses here.)*

Jury Trial: *(check one)* ☑Yes ☐No

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Non-Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files.  Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number.  A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

RECEIVED

OCT 3 0 2020

SUSAN Y. SOONG    Page 1 of 6
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | AbdelFatah Ellawendy |
| Address | 5020 pacific crest dr, |
| | Seaside                     CA          93955 |
| | *City*                   *State*      *Zip Code* |
| County | Monterey |
| Telephone Number | (831) 582-7873 |
| E-Mail Address | karkashendi@hotmail.com |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | John Ferrera |
| Job or Title *(if known)* | District Attorney investigator |
| Address | 1200 Aguajito Rd, |
| | Monterey                    CA          93940 |
| | *City*                   *State*      *Zip Code* |
| County | Monterey |
| Telephone Number | (831) 755-5070 |
| E-Mail Address *(if known)* | |

[ ] Individual capacity    [✓] Official capacity

Defendant No. 2

| | |
|---|---|
| Name | Jennifer Carlquest |
| Job or Title *(if known)* | |
| Address | 1200 Aguajito Rd, |
| | Monterey                    CA          93940 |
| | *City*                   *State*      *Zip Code* |
| County | Monterey |
| Telephone Number | (831) 915-1613 |
| E-Mail Address *(if known)* | jcarlquest@yahoo.com |

[✓] Individual capacity    [ ] Official capacity

Defendant No. 3

Name _____

Job or Title *(if known)* _____

Address _____

_____
         *City*              *State*              *Zip Code*

County _____

Telephone Number _____

E-Mail Address *(if known)* _____

☐ Individual capacity    ☐ Official capacity

Defendant No. 4

Name _____

Job or Title *(if known)* _____

Address _____

_____
         *City*              *State*              *Zip Code*

County _____

Telephone Number _____

E-Mail Address *(if known)* _____

☐ Individual capacity    ☐ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☑ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?
discrimination

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

5th and 14th Amendments

D.    Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

John Ferrera (an investigator at Monterey County District Attorney Office)discriminated against me when herefused to take my report
Jennifer Carlquest (a woman of Caucasian race) committed perjury when she willfully lied under oath
see attachment

## III.    Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    Where did the events giving rise to your claim(s) occur?
Monterey County District Attorney Office
Superior Court Of California in Salinas

B.    What date and approximate time did the events giving rise to your claim(s) occur?
10/09/2020
09/09/2018

C.    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*
John Ferrera discriminated against me when he refused to take my report, failed to perform his job and covered up for a crime committed by Jennifer Carlquest (a woman of Caucasian race)
Jennifer Carlquest committed perjury when willfully lied under oath against the plaintiff
see attachment

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

## IV.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

## V.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

the plaintiff is asking for the appropriate monetary compensation for the damages he suffered and requesting the court to investigate and take the necessary measures regarding the perjury report submitted by the plaintiff in this case.

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    10 / 20 / 2020

Signature of Plaintiff

Printed Name of Plaintiff    AbdelFatah Ellawendy

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

|      | City | State | Zip Code |
| --- | --- | --- | --- |

Telephone Number

E-mail Address

In Monday Oct 5th 2020 I went to Monterey District attorney office located in the 3rd floor at court house (1200 Aguajiti Road, Monterey, CA 93940 to report an incident of perjury (lying under oath) after talking to the clerk and another person from the office I was advised to submit my report to the sheriff department since the incident had occurred in Salinas court house so it should be within the sheriff department jurisdiction. In Friday Oct 9th 2020 around 9:00 am I went to the sheriff department to make my report, I was told that no deputy is available in the office and that I will be contacted shortly by a sheriff deputy to take my report, after 15 min I was contacted by a deputy who asked me some personal information and then informed me that sheriff department does not investigate perjury and that he will call me again to direct me to the right agency. 10 min later the deputy called me back and told me that I need to make my report to the district attorney office, he gave me a phone number (831) 647-7770 to contact.

When I contacted the number given to me, I was answered by a clerk at the district attorney office in Monterey. The clerk told me that she was going to connect me with Mr. John Ferrera

When I first talked to Mr. John Ferrera he said the report has to be submitted by an attorney and then he asked me about my name. When I told him that my name is AbdelFatah Ellawendy, Mr. John Ferrera had literally said "I know who you are, you are bothering us and we are not going to take your report." he then hanged up.

I have sent my report in a certified mail letter to both agencies, the sheriff department and the district attorney office.

I believe the phone conversation was recorded as I also believe that there are records for my visits to the district attorney office and also the sheriff department.

I believe Mr. John Ferrera action was form of:

1.   Discrimination:

I'm not sure how Mr. John Ferrera knows who I was but obviously he has an idea of who I'm and of my race and religion and that was his reason for avoiding me and refusing to take my report. (his statement was very clear)

2.   Failing to take a report:

Mr. John Ferrera refused to take a report of allegations regarding a serious crime and he literally said "we are not going to take your report" although Mr. John Ferrera duty is to investigate reports he denied and refused to perform his duty based on his personal opinion regarding the claimant.

3.   Connivance:

Mr. John Ferrera refusal to take the report is a form of connivance.

**Submitted to: Monterey County District Attorney**

**Report of Perjury**

**Date of incident:** November 9th 2018
**Location of incident:** Monterey County Superior Court in Salinas

**Background:**

In November 9th 2018, a preliminary hearing was held in Salinas Court for case NO. 18CR007432

During the hearing, witness Jennifer C. had willfully and intentionally made false statements while testifying under oath. She had stated repeatedly that I had assaulted her in June 21st 2018 in Monterey Courthouse. she had stated under oath that I lunged at her and gave her bruises. she stated that she reported to multiple police officers that I had injured her. she initially stated that the bruises was on her LEFT flank area and later on during the hearing she stated that the bruises were on her RIGHT flank.

Jennifer C. also stated clearly that my hand had contacted her "during the lunging part".

it appeared from the Monterey County Sheriff report No. FG1803550 which was filed by the defendant and dated on June 21st 2018 that there was no assault had occurred, it also did NOT mention any report of assault or contact. also from reviewing the court images and the surveillance system footage no physical contact between Jennifer C. and the defendant.

the courtroom witnesses had stated that it was in fact Jennifer C. who followed the defendant to the clerk's office.

the Sheriff report, the witnesses and the investigation prove that Jennifer C. statements in the court under oath were false and lies made willfully and intentionally for the purpose of having the defendant prosecuted for an assault.

in addition to the false testimony which Jennifer C. had made under oath, she had also submitted fabricated emails to the court and claimed that they were sent by the defendant (the hard copy of the emails were technically proved to be fabricated and not legit, No electronic copies of these emails were ever shown).

during the preliminary hearing the Judge stopped proceedings to tell the DA that the witness (Jennifer C.) needs to stop shading the truth.

Because of Jennifer C. false statement under oath the defendant was held accused of stalking and assault with the deny of bail. the defendant remained in custody for longer time and was forced to an unfair plea as Jennifer C. also alleged that she was suffering from medical condition because of the defendant and requested $140K in restitution before it appeared that her condition was generic and not related to any crime which led later to the dismissal of the restitution hearing.

in addition to jail and prison term the defendant spent for a whole year, the defendant had suffered a massive amount of physical and emotional damage and still continue to suffer due to Jennifer C. lies and false statements which she willfully and intentionally made while testifying under oath.

I have included the following documents and evidence:

1. a portion of the preliminary hearing script which discuss the mentioned incident above.
2. a copy of the Monterey County Sheriff report No. FG1803550.
3. a copy of the fabricated emails which were submitted to the court by Jennifer C.
4. a copy of the email sent from Mr. William Pernik.

I request from the law enforcement to investigate my report and proceed with the legal procedures and press the necessary charges.

respectfully submitted by:
AbdelFatah Ellawendy
P.O. Box 223088
Carmel, CA 93922

Phone: (831) 582-7873
email: karkashendi@hotmail.com

IN THE SUPERIOR COURT
OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF MONTEREY

--oOo--

ELECTRONICALLY FILED BY
Superior Court of California,
County of Monterey
On 11/27/2018 4:29 PM
By: Jannet Grande, Deputy

THE PEOPLE OF THE STATE OF
CALIFORNIA,

      Plaintiff,

  vs.                          NO. 18CR006985 &
                                      18CR007432

ABDEL FATAH ELLAWENDY,

      Defendant.

_____

Salinas, Monterey County, CA.
November 9, 2018.
Before the Honorable Pamela L. Butler, Judge.
Susan Just, CSR 6838, Official Reporter.

PRELIMINARY HEARING

ORIGINAL

APPEARANCES:

For the People:     OFFICE OF THE DISTRICT ATTORNEY
                    ROBIN DUFFY
                    Deputy District Attorney

For The Defendant: WILLIAM PERNIK
                    Attorney at Law

COURT REPORTER'S TRANSCRIPT OF PROCEEDINGS

1

WITNESS INDEX


WITNESSES                                                    PAGE


JENNIFER C.
Direct Examination by MS. DUFFY                              5
Cross-Examination by MR. PERNIK                             21
Redirect Examination by MS. DUFFY                          84
Recross-Examination by MR. PERNIK                          86

HEATHER MURPHY
Direct Examination by MS. DUFFY                            90
Cross-Examination by MR. PERNIK                            93

JENNIFER MENDOZA
Direct Examination by MS. DUFFY                            98
Cross-Examination by MR. PERNIK                           114


EXHIBIT INDEX


No.     Ex. Description                  ID          EVD

1       Documents                        98          131


--oOo--

MS. DUFFY:  Objection.  Calls for speculation.

THE COURT:  Sustained.

MR. PERNIK:  Fine.

BY MR. PERNIK:

Q    What was the legal paperwork?

A    I believe that time it was a, um, like service or proof of service -- I don't know the document name -- for a small claims case.

Q    Thank you.  Do you remember sometime in June of this year an incident where you saw my client in the courthouse and you started yelling and screaming and calling for help?

A    Yes.

Q    How long were you yelling and screaming in the courthouse in Monterey -- I'm sorry -- in Marina and yelling for help time wise?  Just give us an idea.  Ten minutes, 15 minutes?

A    It wasn't in Marina that I yelled.

Q    It was in Monterey that you yelled?

A    Um-hmm.

Q    How long were you yelling for?

A    I don't know.

Q    Okay.  Would it be fair to say that you became very upset?

A    Yes.

Q    Hysterical?

MS. DUFFY:  Objection.

THE COURT:  Is there some relevance?

50

Was there a court date that you were both anticipating to be at?

THE WITNESS:  We were both there.

THE COURT:  And you were both supposed to be there?

THE WITNESS:  Um, I -- let me think.  Okay.  So that one was -- no, actually.  That one was I think when he was -- oh, I was in the, um, the paperwork filing area in the Monterey courthouse.  And, um, he was upstairs in small claims with John and I was downstairs at the window waiting to file something because we drove together.  I think it was like an extension or something.

And then the next thing I knew, I saw him coming down the steps and he lunged at me at the, um, -- in the little entrapped -- the little whatever that -- I'm sorry.

THE COURT:  Is it the middle of the staircase?

THE WITNESS:  It's right where the paperwork place is.  Where there's, like, the windows and you wait at the three windows and there's the doorway.  It's right across from where you go out.  The security.

So he lunged at me and, um, gave me a bruise on my left flank area.  As he was running out, I told the -- he threw also papers at me at the time, I think.  And then he ran -- he was trying to run out and I was telling security to stop him.  He went even

51

outside the building.

I was so scared I ran for cover behind the security guard that was wearing the white shirt. And then when he wasn't really doing anything to protect me, I ran behind him behind the wall. At which point, a, uh, I was in the corner so at least I was protected. And then the court -- whatever his name was, Richard something, he came over and, uh, put me in a room right in the hallway until he was, um -- he made sure he was off property.

THE COURT: I want to ask a couple questions about this. You used pronouns.

Did you have a court appearance scheduled that day or were you just filing papers?

THE WITNESS: That day I did not have a court appearance, no.

THE COURT: You just went to the courthouse to file papers?

THE WITNESS: John was in a court appearance. So I was with John, and so we were both in the same vehicle. While he was upstairs doing the court thing, I was filing whatever form we had to file at the window.

THE COURT: Okay. And John is who?

THE WITNESS: Uh, he is my, uh, ex-fiance.

THE COURT: Okay. So John had a court appearance scheduled that day?

THE WITNESS: Yes.

52

THE COURT: Okay. And was that -- do you know what type of appearance that was? I'm just curious as to whether it was public or not.

THE WITNESS: Um I think it was a TRO. I think there was two against me and one against John. And I -- 'cause they were on an upstairs floor.

THE COURT: Okay.

THE WITNESS: So --

THE COURT: So let me just ask you.

The temporary restraining order involving this gentleman John, did that also involve the defendant?

THE WITNESS: Yes.

THE COURT: Okay. So it is possible or likely the defendant was there on the TRO that John was there on?

THE WITNESS: Yes, he was. Yeah. He was coming out from it.

THE COURT: Both John and the defendant were legitimately at a court hearing?

THE WITNESS: Yes. Yes.

THE COURT: I'm just trying to clarify whether people had legitimate business at the courthouse or not.

You're saying all three of you were there with legitimate business?

THE WITNESS: Yes.

THE COURT: You were downstairs, something happened?

53

THE WITNESS:   Yes.

BY MR. PERNIK:

Q      Actually, what happened was my client -- you saw my client after a hearing walk into a clerk's office; isn't that right?

A      No.

Q      After my client walked into a clerk's office, you followed him into the clerk's office; isn't that right?

A      No.   I was sitting waiting at the window.

Q      And after you walked into the clerk's office and saw my client there, you ran out screaming; isn't that right?

A      That is not correct.

Q      Okay.   You spoke with an officer, a deputy with Monterey County Sheriff's Department, on June 21st, 2018, and that was a Deputy Roberts -- Robert; is that right?

A      I believe that was his name.

Q      And when you spoke with Deputy regarding what happened, did you ever tell him you had any kind of bruising?

A      No, I did not.

Q      So here you are dealing with this ongoing ex-boyfriend that has been a nightmare for you.   You are going back and forth to court with various restraining order hearings.   And the one --

       In the past you tried to seek charges against

54

him for stalking, but the police officers told you there was no credible threat. So --

THE COURT: All right. I'm going to interrupt. The question is argumentative.

MR. PERNIK: I'm sorry.

THE COURT: Make a direct question and make it shorter.

MR. PERNIK: Okay. That's fair enough.

BY MR. PERNIK:

Q    Um, isn't it true that by this time, June 21st, 2018, you were not successful in getting my client arrested for stalking because there was not a sufficient threat made against you by him; isn't that right?

MS. DUFFY: Objection.

THE COURT: All right. It is up to the officer and the district attorney's office to determine these kind of things.

So this question she cannot possibly answer. You can ask her if she applied for a temporary restraining order or a restraining order. Other than that, it's up to other agencies.

BY MR. PERNIK:

Q    Put differently, ma'am, you wanted to see my client prosecuted for stalking; but you were not successful in seeing your wishes effectuated; isn't that right?

MS. DUFFY: Objection.

55

THE COURT:   Sustained.

BY MR. PERNIK:

Q       But this incident, June 21st, where you say you were bruised, was the first time that you had an opportunity to show to law enforcement an actual injury from my client; isn't that right?

A       That is correct.

Q       But you did not mention it in any way?

A       I did mention it, actually.

Q       Who did you mention it to?

A       Um, multiple officers.  Um, I called Officer -- so my first attempt at reporting to Roberts, the deputy, he did not take a report.  I went outside and I spoke to a supervisor that was parked, um, that John knew.  I don't remember his name.  And he said-- I said I wanted to speak to somebody higher.  He said you need to go back in there.  Before you report him to a supervisor, you need to talk to Roberts and made him take a report.

We went back in.  Roberts came down and he begrudgingly took a report.  I do not know what the report said.

At the time, I was not aware of any injuries.  I left after the report was made.  I started feeling pain at approximately 5:30, six that night.

I informed Officer Moreno from Marina because I was trying to get him to come take a report.  I was -- I called, um, Monterey PD because they were

confused as to whose jurisdiction it was.

Um, and then I eventually took photos of them, the bruise. And I don't remember who I emailed them to. If it was Moreno or Murphy or Jason Takazaki but. I don't remember who I emailed them to but. I don't remember that part but.

Q    And what's the location of that bruise?

A    It was on my, uh, right -- I think it was my right side or flank. I'm pretty sure it was my right.

Q    Any particular location on your right flank?

A    Uh, right between the -- my iliac crest and T12.

Q    One more time.

A    Right between the iliac crest and the -- I'm sorry -- the 12th rib.

Q    Did you ever go to seek any medical attention for that injury?

A    I did not.

Q    Okay. Did you ever have any police officer take a photograph of that injury?

A    No.

Q    Okay. Several weeks after this incident -- I'm sorry. Let me back up.

Did you file a restraining order against my client claiming that he had injured you?

A    I filed I think two TROs.

Q    Did you mention in either of those two TROs

that my client had bruised you in the courthouse?

A        I think they were all prior to that incident.

Q        So in answer to my earlier question, you never filed anything else in court in connection with the civil restraining order alleging that my client had injured you; isn't that right?

MS. DUFFY:  Asked and answered.

THE COURT:  So after the incident in the Monterey courthouse where you received the bruise, did you file a third or additional request for a restraining order?

THE WITNESS:  I did not because the first two were unsuccessful despite all my documentation.  And I spoke to that Richard gentleman who was at the court, and he said, um, that he would attest to what he saw.

MR. PERNIK:  Objection.  Hearsay, Your Honor.

THE WITNESS:  So, unfortunately, I did not because I hadn't been successful on the first two. So, no, I didn't.

THE COURT:  Next question.

MR. PERNIK:  Okay.

BY MR. PERNIK:

Q        So in what manner exactly did you sustain this alleged bruise?

A        There was a little tumbling of such, um, in the little window -- between the window area and the doorjamb.

58

Page 83

Q      What "tumbling of such" are you referring to?

A      Unfortunately, it was fast and I don't really know.  I just.

Q      So you cannot describe here in court how you received the bruises, is that what you are saying?

A      Yeah.  I don't exactly now what collided with me to give me the bruise.

Q      Did my client ever hit you, "yes" or "no"?

A      His hands did contact me.

Q      Oh, his hands contacted you?

A      Yes.

Q      How did his hands contact you?

A      During that lunging part.

Q      Okay.  And how during the lunging part did his hands contact you?

A      The -- I guess it would have been probably the last -- I just remember his hands were like coming at me and he was coming at me, and I was, like, trying to tumble out of the way.  So I -- I don't -- I don't know.  I made the dart out to the -- behind the guy and then behind the wall so.  It was kind of fast.

Q      Okay.  Was there anybody else around when this happened?

A      There was -- I think there was, like, the window people, I think there was one person waiting, and I think -- there was one person, like a lady, on the right of me.  And I don't know who was in the lobby.  I just know there was two security people.

59

One had a white, uh, shirt. I don't remember what the other one was wearing.

Q    Just to be clear, as you're testifying here today under oath, you are denying that you ever followed my client into the clerk's office where this alleged incident happened?

A    Yes.

Q    Is that true? Okay. You're denying that he went there first and you followed him in there; is that your sworn testimony?

A    That is correct.

Q    Okay. Thank you very much.

Now two weeks or so after this, you were called into the CSUMB police department office by Officer Murphy; isn't that right?

A    I don't remember the exact date when that happened.

Q    Sometime in early July, you were called into the police department in connection with an accusation of a sexual assault against my client; isn't that right?

A    I was called into the office, yes.

Q    Okay. And you were read your rights, correct?

MS. DUFFY: Objection.

THE COURT: Well, if you could explain to me the relevance of this line of questioning.

MR. PERNIK: Yes, Your Honor. Would you like me to approach?

60

ONTEREY COUNTY SHERIFF                                              **FG1803550**

14 NATIVIDAD ROAD                                                  Case Number
LINAS CA 93906
ONE (831) 755-3700
X (831) 755-3810

|  | INCIDENTS | SUSPICIOUS | OTHER | | | |
|---|---|---|---|---|---|---|
| Reporting Officer ROBERTSAL | Reporting Officer | Reporting Officer | Reporting Officer | | Case Title \INFORMATIONAL | |
| 1st Code Section M17 INFOR IN | 2nd Code Section | 3rd Code Section | 4th Code Section | Date / Time Reported 06/21/18 16:37 | Date / Time / Day (From) 06/21/18 14:50 | Date / Time / Day (To) 06/21/18 15:15 |
| Street Address 1200    AGUAJITO RD , MONTEREY | | | | Cross Street | | |

**NON SUSPECT(s)**

| Name (Last, First, Middle) CARLQUIST, JENNIFER LEIGH | ADULT |
|---|---|
| Name (Last, First, Middle) ELLAWENDY, ABDELFATAH | ADULT |

COMMERCIAL
REQUESTOR USE ONLY

TO BE DESTROYED OR RETURNED TO THE MONTEREY
COUNTY SHERIFF'S OFFICE, RECORDS SECTION
WHEN NO LONGER REQUIRED.
INFORMATION WILL NOT BE RELEASED OR REPRODUCED
(SECTIONS 11140-11144 PC)

ɔies To

nature Verifying Original Copy of Case:  _____    Date: _____

leased By: _____          Received By: _____    Date: _____

)19  2:28:23PM
( Date/Time          controlled document, duplication or re-issuance controlled by law.          Page No. 1

## MONTEREY COUNTY SHERIFF

CA0270000

1414 Natividad Road
Salinas, CA  93906

Phone (831) 755-3700
Fax    (831) 755-3810

| **Case Number** | **Date** | **Officer** |
|---|---|---|
| FG1803550 | 06/22/18 | ROBERTSAL |

## Primary Narrative

On 6/21/2018 I was assigned to the Monterey Courthouse as a roving deputy. At approximately 1445 hours I received a call from security to respond to a disturbance on the first floor.

While walking down to the first floor from the third floor I heard screams. Upon reaching the first floor I observed a female, later identified as Jennifer Leigh Carlquist, standing near the metal detector with her hands besides her head. I asked CARLQUIST what happened. At that moment a male, later identified at Abdelfatah Ellawendy, walked toward me. CARLQUIST started screaming again, stating "keep him away from me." She began pointing at ELLAWENDY.

I told ELLAWENDY to step towards the stairs leading to the basement. While doing as I ordered, ELLAWENDY informed me he just served CARLQUIST papers. CARLQUIST continued pointing at ELLAWENDY and said, "He lunged at me and threw papers at me." I ordered CARLQUIST to go down the hall near department sixteen and seventeen.

I escorted ELLAWENDY to the basement. ELLAWENDY informed me he had court in department thirteen and was attempting to retrieve his old case numbers in the clerk's office. I escorted ELLAWENDY to the second floor where he obtained numbers from a previous case, afterward I walked him to the first floor where he filed his paperwork. During this time CARLQUIST and her fiancée John Reed were in one of the meeting rooms with the investigator Richard Lee.

I walked ELLAWENDY to his car. Upon returning to the courthouse I observed CARLQUIST and REED walking from the courthouse. CARLQUIST asked if ELLAWENDY left the courthouse. I stated yes. She asked if I could walk her to her car.

I escorted both CARLQUIST and REED to their separate vehicles.

At approximately 1600 hours, CARLQUIST and REED returned to the courthouse. CARLQUIST informed me she wanted a case number. I asked CARLQUIST what happened. She informed me while at the Monterey Courthouse, ELLAWENDY lunged at her and tossed papers at her. Afterwards both CARLQUIST and REED left the building.

I spoke with security officer Raya who stood at the metal detector during the incident. RAYA informed me at approximately 1445 hours, ELLAWENDY entered the clerk's office and CARLQUIST entered the clerk's office behind him. RAYA stated CARLQUIST exited the clerk's office stating ELLAWENDY attacked her. He informed me ELLAWENDY walked out the clerk's office when CARLQUIST began screaming. During the screaming is when I arrived at the scene.

On 6/22/2018 while working as a bailiff at the Monterey Courthouse, I received a call from security. I was informed ELLAWENDY wanted to talk to me. Upon contacting ELLAWENDY, he informed me about what occurred on 6/21/2018. ELLAWENDY stated after the hearing in Department thirteen where his restraining order was denied, he went to the first floor to file more paperwork. He stated CARLQUIST was sitting on the lobby bench and followed him into the clerk's office. He stated he served CARLQUIST court

**MONTEREY COUNTY SHERIFF**                                    CA0270000

1414 Natividad Road                                    Phone (831) 755-3700
Salinas, CA 93906                                      Fax     (831) 755-3810

papers and she left the clerk's office. When he left the clerk's office to go outside CARLQUIST followed him and began screaming until he exited the courthouse. He returned to the lobby when he realized he needed to obtain case numbers from a previous case when I arrived on the first floor.

Upon further investigation, it was discovered both REED and ELLAWENDY were in Department thirteen for court. ELLAWENDY was seeking a restraining order against REED. After court ELLAWENDY went to the clerk's office to file paperwork when CARLQUIST entered the office behind ELLAWENDY. REED informed me CARLQUIST is his fiancée.


CASE CLOSED


//////NOTHING FOLLOWS//////


Approved by : ROBISONDB Date :  06/22/2018 01:49 PM

CONFIDENTIAL
REQUESTOR USE ONLY

DESTROYED OR RETURNED TO THE MONTEREY COUNTY SHERIFF'S OFFICE, RECORDS SECTION WHEN NO LONGER REQUIRED. INFORMATION WILL NOT BE RELEASED OR REPRODUCED (SECTIONS 1140-1144 PC)

 Jennifer Carlquist
to me

Jennifer Carlquist PA-C

EXHIBIT 6                                                    Nov 20

Begin forwarded message:

From: Abduh Ellawendy <karkashendi@hotmail.com>
Date: November 20, 2017 at 4:29:56 PM PST
To: Jennifer Carlquist <831jen@gmail.com>
Subject: Re: Response

I understand exactly what is going on. just like Cierra said: you are trying to manipulate me to get me in trouble and I almost fall for it because I have a good heart
you can go to the police and file another report on me, hire a bodyguard or maybe Mr. ass fucker can take you on a vacation somewhere else so you are safe.

---

From: Jennifer Carlquist PA-C <831jen@gmail.com>
Date: November 20, 2017 at 4:33:27PM PST
To: Abduh Ellawendy <karkashendi@hotmail.com>
Subject: Re: Response

*different font*

I can not believe you are threatening me. Is that what you are saying? That because I will not be friends with you? Do I need to fear for my safety? How could you be like this? You said you loved me and now your going to hurt me?

---

From: Abduh Ellawendy <karkashendi@hotmail.com>
Date: November 20,2017 at 5:36:13 PM PST
To: Jennifer Carlquist PA-C <831jen@gmail.com>
Subject: Re: Response

i would never hurt you, i love you. i am tired of you paying games. you have lied to me from the start. i have friends that now where you work and live. they will make sure you never lie to anyone again. you will never see it coming. i will love  you forever visit you and your pray for your sole. take piece knowing that

*direct threat*

**From:** William Pernik <william@perniklaw.com>
**Sent:** Friday, August 9, 2019 7:11 PM ·
**To:** Abduh Ellawendy <karkashendi@hotmail.com>
**Subject:** RE: Thank You For Contacting Us - perniklaw.com

Mr. Ellawendy,

I don't have a problem resolving a fee dispute with a customer. However, in your particular case, I did a lot of work on your behalf, and we both know that you never paid the full agreed-upon legal fee. I waited for a long time to receive payment, and was not going to offer payment plans towards a trial fee on a delinquent account.

IIn addition, it is not just the 4 hours that you say I spent in the preliminary hearing. I appeared in court with you on eight different occasions, visited you in custody, prepared for the preliminary hearing, reviewed voluminous and convoluted discovery, conducted research, and went back and forth with the court and prosecutor trying to get you the best possible deal. At my regular hourly rate of $400/hour, as stated in your agreement, I have earned much more than the amount charged for all of the hours that I have spent on your behalf, since you've only had $7,500.00 paid on your behalf, which would amount to only 18.75 hours, if billed hourly.

Indeed, as I am sure you remember, I did such a thorough cross examination after my preparation and study of your case that our judge even had to stop proceedings to tell the DA that her witness needed to stop "shading" the truth. You remember how complimentary you were of my work after the hearing, and I know that you meant it at the time. I truly tried to help you in your case; that's why I responded to your email in the manner that I have.

When customers have legitimate questions about their fee, the process usually is to prepare accounting for work performed, meet with customer to go over the statement, and arrive at an agreement, if possible. You chose to make threats of unfounded legal action, which constitutes extortion, and attack me with online reviews, including at least one you made under someone else's name, which I have saved, and which is a felony offense of false personation under section 529 of the Penal Code.

Take care.

Sincerely,

William

CARMEL BY THE SEA
56B 5TH ST LOT 1
CARMEL BY THE SEA, CA 93921-9905
(800)275-8777

/09/2020 01:31 PM

| oduct | Qty | Unit Price | Price |
|---|---|---|---|
| st-Class Mail® ge Envelope Monterey, CA 93940 Weight: 0 lb 4.20 oz Estimated Delivery Date Tue 10/13/2020 | 1 | | $1.80 |
| Certified Mail® Tracking #: 70200640000040614125 | | | $3.55 |
| Return Receipt Tracking #: 9590 9402 5814 0034 0395 17 | | | $2.85 |
| Affixed Postage Affixed Amount: $11.00 | | | ($8.20) |
| al | | | $0.00 |
| nd Total: | | | $0.00 |

Due to limited transportation availability as a result of nationwide COVID-19 impacts package delivery times may be extended. Priority Mail Express® service will not change.

xt your tracking number to 28777 (2USPS) get the latest status. Standard Message and Data rates may apply. You may also isit www.usps.com USPS Tracking or call 1-800-222-1811.

Preview your Mail
Track your Packages
Sign up for FREE @
www.informeddelivery.com

All sales final on stamps and postage. Refunds for guaranteed services only. Thank you for your business.

Tell us about your experience.
o to: https://postalexperience.com/Pos
840-5950-0137-001-00045-42951-02
scan this code with your mobile device,

or call 1-800-410-7420.

l: 051314-0267
eipt #: 840-59500137-1-4542951-2
rk: 01

UNITED STATES POSTAL SERVICE.

CARMEL BY THE SEA
56B 5TH ST LOT 1
CARMEL BY THE SEA, CA 93921-9905
(800)275-8777

10/06/2020 01:07 PM

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| First-Class Mail® Large Envelope Salinas, CA 93906 Weight: 0 lb 4.00 oz Estimated Delivery Date Fri 10/09/2020 | 1 | | $1.60 |
| Certified Mail® Tracking #: 70200640000040614118 | | | $3.55 |
| Return Receipt Tracking #: 9590 9402 5792 0034 1042 38 | | | $2.85 |
| Affixed Postage Amount: $8.00 | | | ($8.00) |
| | | | $0.00 |
| | | | $0.00 |

mited transportation lity as a result of de COVID-19 impacts elivery times may be Priority Mail Express® e will not change.

ing number to 28777 (2USPS) st status. Standard Message s may apply. You may also .com USPS Tracking or call 800-222-1811.

eview your Mail
k your Packages
ign up for FREE @
nformeddelivery.com

nal on stamps and postage. guaranteed services only. ou for your business.

about your experience.
//postalexperience.com/Pos
0137-001-00045-34216-02
ode with your mobile device,

all 1-800-410-7420.

DFN: 051314-0267

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com®

Salinas, CA 93906 OFFICIAL USE

| | |
|---|---|
| Certified Mail Fee | $3.55 |
| Extra Services & Fees (check box, add fee as appropriate) | $2.85 |
| Return Receipt (hardcopy) | $0.00 |
| Return Receipt (electronic) | $0.00 |
| Certified Mail Restricted Delivery | $0.00 |
| Adult Signature Required | $0.00 |
| Adult Signature Restricted Delivery | $ |
| Postage | $1.60 |
| Total Postage and Fees | $8.00 |

Postmark Here — CARMEL BY THE SEA CA 93921 OCT - 6 2020 USPS 10/06/2020 0267

Sent To
Street and Apt. No., or PO Box No.
City, State, ZIP+4®

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com®

Monterey, CA 93940 OFFICIAL USE

| | |
|---|---|
| Certified Mail Fee | $3.55 |
| Extra Services & Fees (check box, add fee as appropriate) | $2.85 |
| Return Receipt (hardcopy) | $0.00 |
| Return Receipt (electronic) | $0.00 |
| Certified Mail Restricted Delivery | $0.00 |
| Adult Signature Required | $0.00 |
| Adult Signature Restricted Delivery | $ |
| Postage | $1.80 |
| Total Postage and Fees | $8.20 |

Postmark Here — CARMEL BY THE SEA CA 93921 OCT - 9 2020 USPS 10/09/2020 0267

Sent To Monterey County DA
Street and Apt. No., or PO Box No. 1200 Aguajito Rd.
City, State, ZIP+4® Monterey, CA 93940

PS Form 3800, April 2015